Case No. 225487, State of Oklahoma et al. v. USA et al., argument not to exceed 15 minutes per side. Mr. McGill, you may proceed for the appellants. Thank you, Chief Judge Sutton, and may it please the Court, Matthew McGill of Gibson Dunn & Crutcher, arguing on behalf of all of the appellants. As I represent Hanover Shoe Farms and the U.S. Trotting Association, I'd like to reserve three minutes for rebuttal. The vesting clauses of the Constitution preclude Congress from granting governmental power to a private entity. But by allowing a private corporation to determine the contents of binding federal regulations, that is exactly what the Horse Racing Integrity and Safety Act does, as the Fifth Circuit now has held. Section 3054 of the Act provides that the Horse Racing Integrity and Safety Authority will, quote, exercise independent and exclusive national authority, end quote, over practically every aspect of horse racing, and that, quote, the rules of the authority, end quote, shall preempt any state law in the field. That necessarily means that the authority's rules are, quote, are under the authority of the United States within the meaning of the Supremacy Clause. Yet this corporation is run by a privately employed chief executive officer that is selected by a board, the members of which are neither selected by nor accountable to either of the elected branches of federal government. And precisely because this corporation is not a federal agency, its rules are effectively insulated from arbitrary and capricious review under the APA. The FTC's oversight cannot save this scheme because the FTC has no effective means of dictating the contents of the federal regulations in this field. Indeed, the Act does not even contemplate that the FTC can put out its own rules for notice and comment. The rules are... FTC issued these final interim rules. Is there some procedure for that? The FTC has interim rulemaking authority. Yes. But... Yeah. And so I think that's important in two ways. First, it demonstrates the design of the statute that the FTC does not have final rulemaking authority. It can't even put out its own rules for comment here. And that distinguishes it critically from the Maloney Act. The SEC can put out its own rules. It can modify FINRA's rules at any time. Out of curiosity, I want to make sure you answer Judge Cole's question, but just out of curiosity, why didn't they follow the SEC model exactly? Is there anything that indicates why they made these changes? Well, I can't speculate. It has consistent with, it has the word consistent, so that looks like they're going down the same road. But as your briefing points out, they don't follow that model in odd ways. I can't figure it out. There's nothing that I'm aware of in the legislative record that would point to it. I could speculate that the FTC simply doesn't have a lot of expertise that would allow it to govern horse racing in a way that the SEC has expertise over the securities markets. That is my speculation. There's nothing in the legislative record that would indicate that. But that, I think, point, the FTC does not have authority, unlike the SEC, to issue its own rules. And as the Fifth Circuit held, that interim rulemaking authority is not much of an answer because of the limitations that it includes. There are two very important limitations. First there's the APA's own good cause requirement. So you would have to, it would have to be demonstrated that there was some kind of exigent circumstance. How about the exigent circumstance being making the statute constitutional? Well, that's an interesting point, Chief Judge Sutton, because the FTC itself, in its orders approving these regulations, has declined to address arguments that the regulations are unconstitutional because it views its consistency review as limited to the text of the statute and whether it is consistent with that statutory text. But to address, I guess, the substance of your question, whether that would be sufficient, I don't think it would because the interim rulemaking authority also has to be, it has to be necessary to protect the health and safety of covered horses or the integrity of covered horse races and wagering on those horse races. So I don't think that interim rulemaking necessarily would cover that circumstance. But what if a different FTC, differently configured FTC, different administration decided to really push the envelope on its Chevron power to construe consistent with more broadly? Would that, is it possible you could, could that be a way to save the statute? So in other words, not our saving it through our own interpretation, but the word consistent with has some room to maneuver. I realize this FTC has not done that, I understand what you're saying, but is it possible that a future FTC could do that? And that seems relevant to me when it comes to the facial challenge. I understand the question. I don't want to speculate about what a future commission might do. No, no, no, it's could they? Like step one, let them. Well, I'm not sure it would. So for instance, if you turn to 3055 of the statute, it says 3055B, which concerns the anti-doping and medication control program. It says that in developing the anti-doping medication control program, the authority shall take into consideration the following seven considerations. So for, I don't know what the FTC could do with that, other than to just check the box to make sure that the authority has indeed considered the following seven factors. Similarly, in 3056 with the horse racing, the racetrack safety program, there's a list of considerations for development in the safety program, and the way that the statute has now been construed by the FTC is that it can only just check the box to see whether those considerations have been considered. So I'm not sure that there is room under the statute, under this version of consistency for review for it to do as you are suggesting, Chief Judge Sutton, and I would point again to a difference with the Maloney Act here. The SEC's consistency review is critically different from this version of consistency review because the SEC, in its version, has to make a determination, the SEC itself has to determine that the regulation furthers the purposes of the act and is in the public policy grounds, and it occasionally does so. The FTC has no similar mandate here. It has consistently rejected any review of what it calls general policy. It disregards policy recommendations in its orders, and in fact, in its consistency review, it's actually so limited that you can see this in the March 25th order at page 29, it won't even disapprove a regulation that fails to include one of the required considerations unless it views it to be, quote, unambiguously required. So it's much more limited than what the SEC does in its version of consistency review, but what the Fifth Circuit found dispositive, and I think could be equally dispositive here, is that the SEC has unilateral authority to modify the regulations, and that does not exist here. All the FTC can do is make recommendations to modify a regulation, and when the FTC does make those recommendations, the authority is not obligated to do so. In fact, and you can see this in the recent September 23rd order that was attached to the authority's recent 28-J response letter. In that order, that order arose from the March 25th order approving the enforcement rule of the authority, and that enforcement rule included a provision that allowed it for the seizure of, quote, objects or devices, and the FTC expressed grave concern that this would allow for the seizure of cell phones and computers, and so the FTC directed, its word, directs, it directed the authority to modify that regulation to make it clear that object and device does not include cell phones and computers, but it then approved the regulation without it being modified, and then when the authority submitted in this September 23rd, that is, the modification that's the subject of the September 23rd order, it did not so modify object or device. So I take it, you know, so thinking of the Amtrak case, I take it there's no way to think of the authority as a public entity. I don't think there is for at least two reasons, Chief Judge Sutton. One, there is no board member or officer that is appointed by the federal government, none, not one, and second, the stock is not owned by the federal government. So those two factors at least would distinguish it from Amtrak. So this is a private body. It is set up as such. The board members were selected by a two-member nominating commission. So what if no one could bring a 1983 claim or a Bivens action against this body? The FTC itself says it's not a federal agency. So the authority is not federally... I mean we have this problem with prisons, private prisons, and we often, I think some of that case law allows constitutional claims to be brought against these private prisons. So in other words, maybe Amtrak is not the only way to think about it. I mean, I haven't considered that the private prison type analogy. I mean, my clients might think that as an appropriate analogy, but it's not a... I don't know that that would answer all the problems here because this is... the authority's rules can't be subjected to normal, arbitrary, and capricious review because it's not a federal agency. I shifted one other thing because your time's getting short. I'm trying to figure out where this private non-delegation or due process... what is this really about? Let's not think about it from the perspective of appointments. I understand how that would work. But if you think about it through this lens of private... why there is a private non-delegation doctrine if there really is, or why it's due process, I'm just... I'm trying to sort it out. Is private entities doing things to other private entities? That's forbidden? Is that the way to think about it? I'm just curious what the function of all this is. So here's how I think of it, Chief Judge Sutton, and acknowledging that there's not a lot of law that has elucidated this. But I think our case is a vesting clauses problem because I think the Constitution says that the power must be vested in one of the three branches of government, and that precludes it from being vested in a private body. Why is that bad? Let's just say you're right formally, and that's what we should do. But why is it bad? What's going on? The Congress still said do it. It's not as if there wasn't any government entity involved. May I respond? The vesting clauses, as Justice Alito elaborated in his concurrent opinion in Amtrak 2, are that this limitation exists to protect liberty. It ensures that our regulations are made by people who are accountable to elected officials ultimately, and the problem with the authority is that it is utterly unaccountable to anyone. That's not quite true, is it? Because the FTC can review the rules of the authority for consistency with the Act, and if the rules are not consistent with the Act, the FTC strikes them down. I mean, there is oversight there, isn't there? I mean, you argued it's not enough. The oversight is limited to ensuring that the regulations issued are within the text of the Act. What's wrong with that? It just gives too much discretion to the... Because the Act here requires the authority to establish a medication control and anti-doping program and a racetrack safety program and leaves beyond those very broad requirements. It allows all of the policymaking and allocates that to the authority. So all of the policymaking here is done by a private body. That is, and the FTC utterly disclaims any ability to review those policy judgments within the broad parameters of the statute. Okay. Thank you. You get your rebuttal. We'll hear from the other side. Good morning. Good morning, and may it please the Court. Courtney Dixon for the Federal Trade Commission. The private horse racing authority functions subordinately to the Commission. The Commission has the sole and final authority to decide which proposed rules become law. Why don't they act like it? It's just so funny. It's so astonishing to have this record of rulemaking where they constantly say, oh, but that's a policy choice. We don't second guess them on policy. And we all know, this is the whole point of administrative law in policy choices embedded in them, and best I can tell from this record, the authority makes those calls, not the FTC. The Commission in its rulemaking has consistently said that commenters can address the statutory requirements, the principles that are laid out in the statutes, the considerations, and that is what the Commission looks like when it's performing its consistency review. You're saying there is no policy discretion in the authority that's not reviewable by the FTC? No, Your Honor, that's not what I'm saying. Congress in the statute... If there is policymaking discretion in the authority not reviewable by the FTC, isn't that a problem? Again, the Commission's review is looking at the statutory requirements and it's reviewing every proposed rule based... We just got ourselves to the key point in the case, and I want you to deal with that key point. You don't have to deal with it. I'm just telling you if you don't, you're not going to help me. The key point in the case is that there's discretion in the authority not reviewable by the FTC. You agreed that's true. I think you have to. What do we do about that? I didn't mean to agree that that was true, Your Honor. The Commission in every circumstance is reviewing the authority's proposal based on the requirements set out in the statute, the considerations set out in the statute, and the other principles set out in the statute, and the Commission absolutely gets to have an independent view of what those requirements, considerations, and principles mean. It doesn't have to take the authority's word for it. But only if it's inconsistent with the terms of the Act, right? And again, the Act says... Is that right? The Commission's review is for consistency with the Act, yes. So to answer Chief Justice Sutton's question, the FTC does not review at all policy choices made by the authority. Your Honor, I think I want to be clear about what we mean by policy choices. I think, Your Honor, again, the Commission... Think of it as Chevron step two. We're on the same page, right? Yes, Your Honor. There's discretion at step two. Here, the discretion resides with the authority. In all circumstances, again, no rule will take effect unless the Commission, in its own independent judgment, in its own interpretation of what the statute says, has said, yes, the authority's proposal is consistent with that. I mean, the problem I have, the policy choices by the authority are unreviewable by anybody, right? No, Your Honor. If they're reviewable, who reviews them then? The FTC's decision to approve or disapprove an authority rule is subject to APA review. Okay, let's think about it this way. I hear what you're saying. If we think what you're saying is not true, if we think this record establishes that there is step two in the Chevron framework, right? We're on the same page, step one, step two, right? We're on the same page of that framework? Yes, I understand. Okay, so if it's our view that the way this works is that at Chevron step two, the authority has final policymaking authority when it comes to filling gaps in statutes. Let's just accept that that's true. I realize you disagree. Let's accept that that's true. If that's true, is there not a problem? Your Honor, the cases that have upheld the SEC SRO model against private non-delegation challenges have uniformly done so based on that, the SEC's ability to approve or disapprove rules based on reasonably fixed statutory standards. Can you answer the question I just asked? My answer, Your Honor, is that the cases... No, there's no problem. No, Your Honor, because again... And that's because of the SEC cases. Private non-delegation... But those cases have a different answer to the step two point because they allow complete authority in the SEC to modify a rule and the review not only has the word consistent, it has public interest of the public interest. That, of course, picks up policymaking. I mean, we don't have to keep talking if you don't want to acknowledge that distinction, but you have to explain why that isn't meaningful. Your Honor, we don't disagree that there are differences in the FTC and the SEC statute. Again... Why isn't it dispositive? Because the cases, again, that have upheld this SEC SRO scheme have looked at, again, the SEC's ability to approve or disapprove based on reasonably fixed statutory standards. The FTC has that, too. The example that plaintiffs offered about the commission's review of the proposed enforcement rule, that helps us, Your Honor. In that case, again, the commission had a different view than the authority of what kind of authority's proposal to seize certain objects. It found the authority's proposal to be inconsistent with the statute's requirement that the enforcement rules include protections for due process. It directed the authority, excuse me, to submit a modification. The authority did. And when the authority did, the commission said, you know, thanks for trying again. You still didn't get there. You've defined this too broadly and you're not to enforce this aspect of the enforcement rule. Let's imagine the statute is written in Chevron terms. It says, if the statute is clear on the point, the authority has no rulemaking discretion. All right? But it then says some statutes aren't clear. That's why we have step two of Chevron. And the statute unambiguously says, if the statute is ambiguous about a point, the FTC has no authority to second guess the authority when it fills that gap. So I know that's not this statute. I know it's not the SEC. I don't want to hear about the SEC. Is that a problematic statute? It's written just as I said. Is that problematic? The private non-delegation cases, Your Honor, have looked at whether the agency... Is it... No, just do a yes or no and then qualify. I think it would be a closer question because, again, the question is whether the private body functions subordinately. I've explained the SEC... Exactly. ...SRO cases. We also have Atkins, Your Honor. In Atkins, the statute there, the coal board has proposed the prices and the coal commission could approve... When you said it's a closer question, I don't understand why it's close. I mean, I worry that I'm not understanding the case law because I don't understand how my hypothetical statute, it's a complete hypothetical, isn't deeply problematic with the subordination point because there the FTC is subordinate to the authority in that space of policy making or gap filling. I don't understand how you could think of it any other way. And Your Honor's hypothetical is describing additional limitations on the agency. That's why I said, again, it's... No, exactly. So I thought you would agree with me that is problematic because you couldn't say in that setting that the authority was subordinate to the FTC. You'd have to say it's the reverse. In a setting in which a statute was not providing a role to the agency to make, again, this approval or disapproval decision based on the requirements that Congress laid down, yes, that would be a statute that wasn't providing the same tools that the FTC and the SEC have here and we have the cases, again, approving the SEC SRO model. We also have Atkins, as I explained, where there the Supreme Court held the statute was unquestionably valid. I also want to note, Your Honor, the independent rulemaking authority. We disagree with the Fifth Circuit's decision in describing that authority as an emergency, you know, break glass standard. It's not. We think that the cross-reference to 553 is defining what an interim final rule is. Doesn't it have a good cause requirement? Again, we think, Your Honor, the 3053E, the independent rulemaking authority, it says the commission may promulgate an interim final rule, comma, to take effect immediately, comma, under the conditions specified in 553 if the commission finds that it's necessary to protect. We think the best reading of the statute is that reference to 553 is defining what an interim final rule is and what's doing the work there, what's authorizing it, is that phrase may promulgate an interim final rule if necessary to protect the safety and health of horses. But even if you disagree and think that the good cause standard has to be independently satisfied, it's still not an emergency break glass provision, and that's because the particulars of this rulemaking scheme. But why isn't it just the word interim somewhat damning? Again, I think it's the particulars of this rulemaking scheme. Under the statute, obviously the authority proposes rules. Each proposed rule of the authority under the Act has to be made available for public comment, and under the commission's procedural rule, which the commission is authorized to those alternatives, why the authority didn't choose those alternatives. It's reasonable in that circumstance, your honor, for the authority to conclude that additional public comment would be unnecessary in the words of 553 if there's already been public comment on the authority's proposal and any potential alternatives. Have any of these interim final rules after notice and comment become final rules? I know the statute's fairly recent, but can you cite any examples where they've become a final? The commission hasn't utilized its interim final rulemaking authority. It's repeatedly... Why isn't that problematic? Your honor, the statute hasn't been in effect that long. It's repeatedly told the public that it can petition for a rulemaking if it's necessary to protect the safety and health of horses, again, what the interim final rulemaking authority describes. And again, the fact that it's an interim final rule, I think in the... Do you know why it ended up not being like the SEC? I mean, this whole case gets so much easier if they have the public interest at the front end and they have the modification power at the back end. And do you have any sense of why those weren't added to the statute? I don't, your honor. But again, we disagree with the Fifth Circuit's holding here that the FTC's authority is so limited. I'll also say, as my time concludes with the court's indulgence, your honor asked about the FTC's application of the statute. As your honor noted, we are in the context of a facial challenge. If there are questions about the FTC's application of the statute, that can be addressed in an as-applied constitutional challenge. But a facial challenge is one of the... This court and the Supreme Court have said one of the hardest challenges to mount, and you have to show that the statute is unconstitutional in all of its applications. That's not the case here. Thank you. Thank you. Good morning. Good morning, your honors. May it please the court. Pratik Shah for the authority defendants. If I can go to the colloquy that you are having with Ms. Dixon just now about what sort of authority is the Federal Trade Commission exercising under its consistency review. Just to be clear, Chief Judge Sutton, the statute in the SEC FINRA context doesn't have a public interest component. What it says is, and this is quoting from the FINRA SEC statute, the commission shall approve a proposed rule if it finds such proposed rule change is consistent with the requirements of this chapter and the rules. That is exactly the language that we have in this statute. Where the public interest in furthering investor confidence, all of that comes in is from the various standards set forth in the SEC Act. We have similar standards in this Act. For example, 3056B2 of the HISA statute says that the racetrack safety program has to be consistent with the humane treatment of horses. In the context, in this context, that's what the public interest is. The humane treatment of horses. Back to the Chevron framing, there is no final power that the authority exercises that's not reviewable by the FTC. Exactly, your honor. Is that your position? Yes, your honor. In our position, it is the public interest type determination that you're talking about, just like the SEC ultimately reviews FINRA's determination for consistency with the public interest there, furthering the market's integrity, consumer confidence. Here, consistent with the humane treatment of horses, that's the standard in 3056B2. It is the... I'm sorry, your honor. It has much broader power than just regulating the humane treatment of horses, right? Well, that is an overarching standard for all of the racetrack safety rules. For example, your honor, it's not the authority that... Their authority is limited just to the humane treatment? No, no, no, no. It also has other, many other statutory standards. I thought so. Okay. How are those reviewable? Same way. The authority obviously drafts the rules, so they're going to take the first cut at making... Correct. And we're going to have to go and look at that. That's not how I thought about it, but you're saying this with lots of conviction. Yes. So I'm going to read it with open eyes. Please. What do you do about the back-end point that there's no modification power? Yes. So let me go to the back-end point. The one thing, when you go back and read it, you can compare the language, compare the 3056... Are you just... You delivered a high promise. Yes. Yes. Are you about to tell me I'm going to be disappointed? No, no, no, no, no. I'm telling you why it's even better than what I said. Oh, okay. You didn't overstate it enough. No, no, no. Yes. The statutory language is identical. The public interest standard inconsistent with humane treatment of horses standards is functionally similar in the context. And there are many other standards, per Judge Griffin's point. The point I was going to add to that, when you go back and read, is there's actually a lot of law on this, on consistency review in the SEC FINRA context. The case I would point you to, which is cited in our briefs, which I think is worth a look at, is the D.C. Circuit case called Susquehanna. There's a whole line of D.C. Circuit cases, but it explains that it is like real... That the agency actually has to exercise real independent review. It can't just sign off on the determination. Has to exercise its own discretion, make its own reasoned findings, and second guess that. Okay. Yes. And so we think all that applies here. Now, to your question on the back end, it is true, obviously, the language, unlike on the front end, is not the same. It has the interim final rulemaking authority. I'll make two points. One is, of course, the FTC construes that good cause requirement. Of course, plaintiffs say that, look, there's the good cause requirement, and then there's the determination in 3053E that Congress has to find it's necessary to further the safety and integrity of horses in order to do it. FTC construes that as you satisfy the good cause requirement by making the determination that Congress made. In a universe, Chief Judge Sutton, to go to your question of constitutional avoidance, we're trying to construe this statute not in a way to invalidate it on a facial challenge, but to uphold it. I think we have the better reading that when you read 3053E, that FTC has pretty broad authority under its interim final rulemaking authority to actually enter any rule that's necessary to protect the health and safety of horses. That's the condition that Congress satisfied, and that is what satisfies the cross-reference to the APA good cause requirement. However, it may be that the plaintiff's reading is equally reasonable. You may even find it more reasonable, but the test under constitutional avoidance is, do we have a plausible construction of the statute to avoid a facial invalidation? Certainly, that has to be at least a plausible reading. I think it's the better reading that the FTC, if it finds that it's necessary to protect health and safety of horses, can in fact modify any rule that has already been promulgated under the statute. We're here on a facial challenge, Your Honor, and yes, it hasn't been exercised. There are as applied challenges available. They've sued us under the APA in Louisiana making a lot of these arguments on the very provisions, individual provisions that they're talking about. Mr. McGill said they don't have an APA challenge. Some of the plaintiffs in this very case have brought extensive APA challenges, and we know from that Susquehanna case that I mentioned that in fact courts do review it under the APA standards. So, there are ways to get at the problems that plaintiffs have, and if FTC has taken too parsimonious a view. Just to make sure I'm following your point, under the interim rulemaking power, you think that power, generously construed, makes up for any lack of modification power in all the settings. And I just find that hard to believe, and I worry that it's really pushing our constitutional avoidance power a little too far. So, Your Honor, the reason why I don't think it's pushing it too far is because their chief, submission on that 3053E is that there's an independent good cause requirement, independent of the conditions set forth in 353E. If they're wrong, let me just tell you the thought that's going through my mind, and you tell me why not to worry about it. I think what's going through my mind is I write this, I, one out of, we'll call this a concurrence or a dissent, on my own behalf, I'm writing an opinion that says, I want to say this, I want to say this, here's how we're going to do it. I cannot write that without, in the back of my mind, acknowledging, if there are settings where the FTC is subordinate to the authority, I consider that a serious problem. And it would astonish me that there is a way for me to write something that accounts for every one of those settings. And the reason I'm so skeptical is I've already watched the FTC deploy this authority. I've already seen their reluctance to second-guess the authority. And so that leaves a world, we've worked very hard to avoid the facial invalidation, where you're constantly going to be asking, in this made-up statute, we rewrote it, who's subordinate here? It just doesn't seem to serve any function. Why not just say to them, guys, this is easy, this was bipartisan, just put the modification power straight in, it'll be just like FINRA and the SEC, problem solved. Sure, Your Honor. I guess it comes down to whether you think that you can exercise constitutional avoidance power to read 3053E as we do. Because if we think, if you read it as we do. It covers every subordination problem? Well, if they actually have, on the back end, authority to modify any rule, then it's a lot like, it's almost on all fours with the SEC modification authority, which allows the SEC to modify any rule. Remember, on the front end, the review is identical in the SEC and in this context. So the question is, is the difference, is the delta between the modification power in the SEC statute and in this statute of constitutional significance? And if you read it like they do, which is, you have to show both the conditions that Congress set that it's necessary for the health and safety of covered horses, and a separate emergency good cause standard, then I agree with you. There would be the problem that you've identified, Chief Judge Sutton. But if you read it like we do. But if we read it late, there's still an interim rule, and I'm using this interim rulemaking to deal with after- Your Honor, the interim, as we know, interim rules, once they go into effect, I think there's literature on this, like over 50% of interim final rules become final rules. That's just the nature. Interim final rule is not a temporary rule. That's a separate concept under the APA. The interim final rule goes into effect, and that stays, there's no sunset provision in the APA. An interim final rule stays into effect unless there's a separate notice and comment rulemaking that supersedes it. So I wouldn't get hung up on that distinction. I think the real question is, when can they exercise that modification authority? And in our view, they can exercise it when they satisfy the conditions that Congress has set forth in black and white in 3053E. That is, when it's, quote, necessary to protect the health and safety of covered horses, or necessary to protect the integrity of covered horse races and wagering. That is well within constitutional avoidance bounds. It's well within the Supreme Court's precedents. Take like Zadvydas or any of the Supreme Court's constitutional avoidance where they read in limitations on detention periods or anything. You wouldn't be reading in anything here. All you would be doing is saying that the cross-reference to 533BB, the cross-reference to the good cause requirement, is satisfied by the very next clause of the statute which sets forth the two conditions. And so the last thing, if I may, I realize I'm over time, is I do want to mention Adkins because the way the other side kind of trumpets the modification power, they say, well, Adkins was very different because there the coal commission was reviewing, and it was a private industry, a player there, they said, well, they could approve, disapprove, or modify based on freewheeling discretion just because they didn't like the price. That is false. The statute in Adkins says they could approve, disapprove, or modify, and this is the key part, quote, to conform to the requirements of this section. That is, it has to dovetail to the terms of the statute, which sounds a lot like is it consistent or inconsistent with the statute. So in the Adkins, the Supreme Court case, the only, the controlling Supreme Court case here, the Supreme Court said it was unquestionably valid against a private, not on the fringes, not a close call, unquestionably valid, that scheme, and in that scheme, the private industry board would submit a price, and the coal commission could approve, disapprove, and only change it if it was necessary to conform to the requirements of the section, not because it thought another price was better, and those plaintiffs say in their reply brief, after not acknowledging in their opening brief, they say in their reply brief, oh, well, they could just do that based on just and equitable, but in fact, the statute sets forth, just like the HISA statute, several factors to consider, like the prices of analogous products in the market, anti-dumping obligations, all of those things, and it set forth, actually, that statute on the last page of the addendum in our brief. We actually reproduced the Coal Act statute, pages 29 and 30, so you can look at it yourself, and so it wasn't a freewheeling modification authority. The coal commission had to approve the proposed, couldn't change the proposed price unless it found it, it could only change it if it found it inconsistent with the requirements of the section. If that was valid, and they had no back-end modification power in that statute, they could not then later change the minimum price. So this is kind of the odd case where it's not maybe a court of appeals case that's most in point, it's actually a controlling Supreme Court case that's most factually analogous. That's the Adkins case. If they cite Carter Coal, that was a case that came before Adkins, right? We understand. Right. And so, look, I understand that they want to revamp the private non-delegation doctrine. There's been some interest in the Supreme Court to revisit it, but it's up to the Supreme Court to overrule Adkins. This panel should apply it, and I don't think there's any material distinction between that case and this one. Thank you very much. Thank you, Your Honor. I appreciate your argument. Mr. McGill. Thank you, Chief Judge Sutton. Just starting with Adkins, page 388. These referring to the prices may be approved, disapproved, or modified by the commission. The reading offered by the authority today is novel. It's contrary to the Supreme Court's own description of the statute. It's also contrary to the Fourth Circuit's description of the statute in Pittston and Amtrak's discussion of it, the D.C. Circuit's discussion of it in Amtrak. I want to start with the 3056B2. That is the statutory provision cited by the authority. It says, the horse racing safety program shall include a uniform set of training and racing safety standards and protocols consistent with the humane treatment of covered horses. One regulation the authority issued pursuant to that governs use of a riding crop, a horse whip. It says six times in a race. The FTC is utterly powerless to change that. It says it's powerless to change that. But if the authority reduced that to zero tomorrow, just decided, woke up and said we're arbitrary and capricious review of that decision by the authority because the authority is not a federal. But they say they could do an interim rule. They say they can do an interim rule. So several problems with that. First, the construction they offer of their interim rulemaking authority is just not a remotely plausible construction of the statutory text which says that the interim final rule must be under conditions specified in section 553 of the APA. So that good cause requirement is absolutely written into the statute. But beyond that, this is interim rulemaking power. It is not final rulemaking power. It's contrary to the statutory design. The statute does not contemplate the FTC ever issuing a final rule. It doesn't even allow the FTC to put out its own rules for notice and comment. It can only publish the authority's proposed rules. Just to make sure I'm following this, you admit they still have, the FTC does have interim rulemaking power. Your point is that it's not clear what happens to that? Why isn't the answer if they don't have any other rulemaking power, the interim rules become the final rules? Well, so I think there's a couple problems with that. One is that I don't agree that the interim rules can just exist forever. But they do have interim rulemaking power. They have interim rulemaking power subject to the conditions in the statute. So this is not a substitute to modify for at least two reasons. One is that they can't do it at their own discretion. It has to satisfy the 553 good cause standard. And the second reason is that you have to have a finding that it is necessary to protect the health or safety or the integrity of horse racing or wagering. And that doesn't even remotely cover the broad scope of this statute. So it's not remotely a substitute for the power that the SEC has to modify regulations issued by FINRA whenever the SEC wants. Who makes that finding that you're referring to? Which one? Whether it's necessary to have these rules to protect safety, whatever that phrase is you just referred to. Well, under the statute, I think it's the commission that would, the commission has to make the finding. All right. So the commission has the authority to do that? The commission... Not any sort of notice, comment, or feedback from the authority? Does the authority provide that sort of feedback? The way I read the statute, Judge Cole, is that the commission has to make a finding that there is a, I'll call it a necessity finding. Okay. So the commission makes a finding. The commission makes a finding. There's a separate good cause requirement of the APA, which is, I think, reviewed de novo by, you know, in a court of appeals as to whether that standard is set. If somebody challenges it. That is my understanding of it. But it's not a substitute for final rulemaking. If I may make just one... But does it then become final? I guess I'm a little bit unclear on when that interim rule becomes final. Because I thought I heard from the horse racing authority that the rule becomes final... Their view is that an interim rule can just persist indefinitely. And I would respectfully suggest that's contrary to the statutory design. What would happen if they, FTC does an interim rule. The authority does rulemaking, which it has authority to do, and its rulemaking is different from the FTC's interim rule. Does the FTC have authority to not approve the authority's rule on the ground that it's a conflict with their interim rule? Not under the FTC's construction of its authority. So I want to be very, very complete about this. So the consistency review is that it has to be consistent with the statute or the applicable rules approved by the commission. But the commission in its various orders says that that requires only compliance with the commission's procedural rule concerning the issuance of regulation. That's how it's construing that. That's correct. If I may make just one last point, the consistency review... I'm a little unclear as to the scope of the power to issue interim rules by the FTC. Are they limited to the health and welfare of the horses? Is that it? There are two separate findings that must be made to... You have to have good cause. Then it's limited to the health and welfare of the horses? Yes. Or integrity of horse races. Or what? The health and safety of covered horses or the integrity of covered horse racing and wagering. Does the horse racing authority have more authority than those categories? Absolutely. Okay. So that's what I thought. So the interim rules that the FTC can promulgate are more limited than the rulemaking of the horse racing authority, right? They're not the same. Yes. That is absolutely true. Okay. So the argument that this somehow substitutes for final rulemaking as to the whole scope of the statute, it's just not true, right? I don't believe it is, and you've made the point more persuasively than perhaps I did. So can the interim rules cover other sort of covered persons, jockeys, safety of people around the track, things of that nature, or is it just horses and the, I guess, whatever this horse racing, what did you say, operation? I'm not sure what... I mean, I cannot... I just want to know how broad it is. Right. And the FTC, as I thought was acknowledged, has not issued any interim rules. But all I can do is read the statute. This is a facial challenge as opposed to applied challenge, so we don't really look at the evidence at this point. Right. No, I mean, so... Back to Judge Cole. Just think Venn diagram, are they overlap entirely or not, and if not, why not? They don't overlap entirely because there are a number of topics that the commission, I mean, I'm sorry, the authority is tasked with regulating that would not constitute the health or safety of covered horses. I could see Congress being concerned about the health and welfare of the horses and therefore giving the FTC this interim rule-making authority before the horse racing authority acts, well, we have to protect the horses here. So FTC promulgates some interim rules if you have to, as to this limited topic. But the problem I see is that the authority has so much broader power that is not subject to review at all by the FTC, other than consistency with the act, which is so general that it doesn't mean much. I agree with that, Judge Griffin, and I would just make the last point that the consistency review is not the same as the SEC's because the SEC has to make its own determination that these requirements are made, and that is... They cited the Susquehanna case, that is the case I would cite for that proposition. All right, well, thank you so much, all three of you. I'm so grateful with hard cases, and I have three great lawyers, and every time I was reading a brief, different people were in different poll positions because the brief writer always had my attention, and the same is true today. So thank you for terrific presentations, both orally and in your briefs. Really appreciate it. Thank you, Chief Justice.